IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARY J. JONES,

      Plaintiff,

    v.

HONDA OF AMERICA MFG., INC.,

      Defendant.

:

:

:

:

Case No. 3:13-cv-167

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT HONDA OF AMERICA MFG., INC.'S, MOTION FOR SUMMARY JUDGMENT (DOC. #15); PLAINTIFF'S CLAIM OF DISABILITY DISCRIMINATION CLAIM UNDER OHIO REVISED CODE § 4112, BASED ON A FAILURE TO ACCOMMODATE AND BECAUSE OF DISABILITY B (FIRST CLAIM FOR RELIEF), AND PLAINTIFF'S CLAIM OF RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615(a)(2) (THIRD CLAIM FOR RELIEF), REMAIN VIABLE; ALL OTHER CLAIMS ARE DISMISSED WITH PREJUDICE; TELEPHONE CONFERENCE SET

---

Plaintiff Mary J. Jones ("Plaintiff" or "Jones") filed suit against her former employer, Honda of America Mfg., Inc. ("Defendant" or "Honda"), alleging claims for disability discrimination and sex discrimination under Ohio Revised Code § 4112.02(A), retaliation under the Family and Medical Leave Act, ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and intentional infliction of emotional distress under Ohio common law. The Court has federal question jurisdiction over Jones' federal claim

pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

Pending before the Court is Honda's Motion for Summary Judgment (Doc. #15). For the reasons set forth below, the motion is SUSTAINED IN PART and OVERRULED IN PART.

## I.    FACTUAL BACKGROUND

Jones applied to work at Honda in March, 2002. Def. Ex. 2 (Doc. #15-1 at 35). The application asked if she was able to communicate effectively with others, perform repetitive tasks, follow detailed instructions, and maintain high levels of work quality. It also asked if Jones was willing to report any injuries or illnesses to her supervisor immediately, treat all associates with dignity and respect, perform work at a pace controlled by the production line, and be held accountable for the quality and accuracy of her work. Jones answered "yes" to each question.[1]  Def. Ex. 3 (Doc. #15-1 at 39). Jones received an offer of employment in June, 2002, conditioned upon a background check, verification of prior employment, and a medical examination. Def. Ex. 4 (Doc. #15-1 at 41).

---

[1] According to Honda, Jones "submitted a questionnaire in which she agreed that as part of her employment with Honda she would do" all of the above. Doc. #15 at 10. More precisely, however, the application only asked if Jones was "able to" communicate effectively with others, perform repetitive tasks, follow detailed instructions, and maintain high levels of work quality, and if she was "willing to" do the rest. The application did not expressly elicit a promise from Jones that she would, in fact, do any of those things as a condition of employment.

2

The medical examination involved another questionnaire.  Jones was asked if she had she any current "physical complaint, impairment, or disability," or "any injury or illness related to work" otherwise not stated on the form.  Jones answered "no" to each question.  She disclosed an infection that she had suffered from exposure to metal, a broken knee cap, a pin in her left ankle, and the swelling of her hands on the assembly line at her then-present job.  Def. Ex. 5 (Doc. #15-1 at 42-43).  Jones had, however, seen a chiropractor in January and March of 2002 for back and neck problems.[2]  Jones Dep. at 32 (Doc. #20-1 at 9).

## A.  Jones Begins Employment at Honda

Jones was offered a job by Honda in September, 2002, and began to work at its engine plant in Anna, Ohio, on October 7, 2002.  *Id.*  She was provided a copy of Honda's employee handbook, and was aware that she was required to comply with the company policies as part of her employment.  *Id.* at 34 (Doc. #20-1 at 10).  The employee handbook stated Honda's non-discrimination policy, which prohibited discrimination on many grounds, including disability and sex.  The policy applied "to all terms and conditions of employment, including . . . corrective action," and required any employee who believed that she was a "target of...

---

[2] Jones stated in deposition that she first saw her chiropractor, John Gillis, in 1983.  She stated in her deposition that she saw him in January, 1989, and that she continued to see him after that, including visits in January and March, 2002.  Jones Dep. at 30-32 (Doc. #20-1 at 9).

3

discriminatory conduct" to make a report to management.  Def. Ex. 9 (Doc. #15-1 at 55).

The handbook also explained Honda's leave policy, which allowed an employee to take a leave of absence.  Any absence would only be approved after the submission of proper documentation and information in support of the request. The leave policy also explained the eligibility requirements for taking FMLA leave. In addition, the handbook explained the company's policies on medical restrictions, which also had to be documented and approved.  Under the policy, Honda would "make every effort to provide reasonable accommodations" to an employee's work restrictions based on medical needs.  Doc. #15-1 at 104-06, 122.

"Associate Standards of Conduct" were also set forth in the handbook. Violation of the standards would "result in corrective action, up to and including separation from employment."  The standards of conduct included: failing to immediately report a workplace injury or illness; leaving early or returning late from breaks or lunch; working below Honda's standards for quality or quantity of work; using abusive or threatening language either to, or about, fellow associates; creating an intimidating, hostile, or offensive working environment; and refusing to comply with instructions of supervisors or managers.  *Id.* at 63-64.

Honda dealt with infractions through "coaching" and "counseling." Coaching was an "informal discussion" with a supervisor "to identify solutions to help improve the situation."  Counseling, on the other hand, was "a formal way of

4

documenting" an employee's need for improvement and "addressing conduct that is not consistent with the associate standards of conduct." There were three levels of progressive counseling that might result in an employee's suspension, reassignment, or termination. A terminated employee had the option of appealing the termination to the Separation Review Panel, which, at the employee's request, would consist of either associate-level peers or senior management. The members of the Separation Review Panel would vote to uphold or reverse the employee's termination, and any such decision was final. *Id.* at 60, 65-66.

## B.     FMLA Leave Taken during Jones' Employment

Jones took seventeen leaves of absence between October, 2003, and December, 2010, that Honda approved as FMLA leave.[3]  Jones Dep. at 55-65 (Doc. #15-1 at 15-17).  Jones admitted that Honda did not demote or terminate her after she returned from any of the leaves she took. *Id.*  The FMLA leaves included, but were not limited to, the leave that occurred in October, 2003, when she had back pain that required her to have a sixteen-day period of leave for treatment.  Doc. #18-5 at 3.  A letter from her doctor indicated that she required further treatment after an exacerbation of back pain in April of 2004. *Id.* at 4. The letter stated that she would be treated in order "to bring the patient back to

---

[3] Jones took leave in October, 2003; May, 2004; February and December, 2005; March and October, 2006; January and November, 2007; February (twice), April, and July 2008; April, September, and October 2009; and March, November, and December, 2010.  Jones Dep. at 55-65 (Doc. #15-1 at 11-13).

the level of structural healing attained prior to this exacerbation." *Id.* Records also show that Jones' back pain required her to take eight days of leave in February of 2005. Doc. #18-5. Her doctor cleared her to return to work after that leave with no restrictions. *Id.* at 6. Jones was treated for hip pain associated with her back problems on December 7, 2005. *Id.* at 7. In October, 2006, she was prescribed five days of leave from work to be treated for her back pain. *Id.* at 8. In February, 2008, Jones was given two periods of leave due to her back pain: from February 5-18 (*Id.* at 9) and from February 20-26 (*Id.* at 10). In March, 2010, her doctor prescribed a six-day absence from work for treatment of back pain. *Id.* at 11.

## C. Relevant Disciplinary Issues in Jones' Employment Record

Jones received coaching or counseling for several different incidents of creating a hostile work environment between 2008 and 2010.[4] On December 12, 2008, she was coached for failing to follow directions and creating a hostile work environment after yelling at co-workers on the assembly line. Def. Ex. 34 (Doc.

---

[4] Honda points to a lengthy catalog of what it characterizes as "poor performance reviews," as well as incidents of coaching and counseling that Jones received over the years for "quality issues" and "time and attendance issues." Doc. #15 at 14-16. However, Honda asserts that its decision to terminate Jones was based solely on her having creating an intimidating, hostile, and offensive work environment on February 9, 2011, and the other incidents of such behavior. Doc. #15 at 30-33. Thus, prior discipline for "quality issues" or "time and attendance issues" do not make it more or less probable that Jones engaged in the hostile or intimidating behavior that led to her termination. The Court, therefore, considers relevant only the discipline for violations of the particular standard of conduct cited as the legitimate, nondiscriminatory reason for Jones' termination.

6

#15-2 at 57).[5] On September 15, 2009, Jones received coaching for "creating an intimidating, hostile, offensive environment by yelling," and continuing to yell after a co-worker and a supervisor "tried to control" her yelling until she had to be removed from the assembly line. Def. Ex. 44 (Doc. #15-2 at 85).[6]

Honda cites two other examples, although the record does not reflect that Jones received "coaching" or "counseling" for either incident.[7] On October 11, 2010, Jones asked to use the restroom but was not allowed because there were several people already waiting to use it, and she made the request only thirteen minutes before her lunch breach. In response, she told a supervisor that the denial "will come back on you." Def. Ex. 49 (Doc. #15-2 at 100); Jones Dep. at 100-12

---

[5] According to Jones, she was yelling to make herself heard over the sounds of two employees talking and the machinery. Jones Dep. at 84 (Doc. #20-1 at 22). Jones denies that she created a hostile work environment during this incident, and insists that any hostile work environment was created by the other two employees. *Id.* at 86 (Doc. #20-1 at 23). The Court views this disputed incident in a light most favorable to Jones and does not consider it among the relevant disciplinary incidents.

[6] Jones does not dispute that this incident occurred. Jones Dep. at 96-97 (Doc. #20-1 at 25).

[7] Honda describes the October 11, 2010, interview as Jones being "coached for creating an intimidating, hostile and offensive work environment." Doc. #15 at 15. However, unlike the other two incidents, there is no form or documentation showing that, at the time, the interaction was considered "coaching" or "counseling" for violating that specific standard of conduct. Instead, the exhibit contains only a transcription of what appears to be an interview with Jones about the incident. Def. Ex. 49 (Doc. #15-2 at 100).

7

(Doc. #20-1 at 26-29).[8] In January, 2011, after a supervisor told Jones that she was creating a gap on the assembly line, Jones told another supervisor that she would "show them a gap." Jones Dep. at 112 (Doc. #20-1 at 29).

### D. Jones' FMLA Leave in Late 2010 and Medical Restrictions

In November, 2010, Jones' chiropractor, Dr. John Gillis, diagnosed her with a lumbrosacral sprain and certified to Honda that Jones would require leave from November 2, 2010, until November 15, 2010. Honda approved this as FMLA leave and Jones returned to work on November 18, 2010. When she returned, Dr. Gillis submitted a "Work Capacity" form stating that Jones could perform no repetitive movements or operate a foot pedal with her right leg from November 18, 2010, through December 8, 2010. Honda complied with these restrictions. Jones Dep. at 113-15 (Doc. #20-1 at 29-30); Def. Ex. Q (Doc. #15-3 at 9).

In December, 2010, Dr. Gillis diagnosed Jones with a cervical sprain and certified that she needed to be off work from December 9, 2010, through December 20, 2010. Jones received approved FMLA leave from Honda for that time period. Dr. Gillis again submitted a "Work Capacity" form that restricted Jones from making repetitive motions or using a foot pedal with her right leg, for

---

[8] In the transcribed interview with Jones, the comment she made to the supervisor after being told to wait to use the restroom involved profanity. During her deposition, Jones denied using profanity, but did not deny that she said the denial would "come back at you." Jones Dep. at 108-09, Doc. #20-1 at 28. The Court views this incident in Jones' favor and accepts her version of the exchange for purposes of ruling on this motion for summary judgment.

the period of December 20, 2010, until January 18, 2011. Jones Dep. at 116-20 (Doc. #20-1 at 30-31); Def. Ex. T (Doc. #15-3 at 10).

In November and December 2010, and January, 2011, Jones was trained on the M31 and B15 processes, two assembly line processes that she needed to learn because of her reassignment from the "Headline" production line to the "Main" production line. She received over 30 hours of training for each process through January 20, 2011. Def. Ex 56-61 (Doc. #15-2 at 105-28).

### E.    Jones' Final Coaching and Termination

On February 4, 2011, Todd Parker, Jones' Team Leader, had a coaching session with her to discuss quality issues on the M31 process and her inability to meet the assembly line speed requirements. Jones Dep. at 130 (Doc. #20-1 at 34). On February 9, 2011, Jamie Branson, Jones' supervisor, met with his supervisor, James Dillard, to discuss Jones's ongoing "quality and quantity issues on the M31 and B15 processes." They decided to have Jones undergo an additional 12 hours of training. Branson Decl. ¶¶ 3, 5 (Doc. #15-16 at 1-2).

Later that day, Branson and Parker met with Jones to discuss the additional training. Jones Dep. at 131 (Doc. #20-1 at 34). Branson told Jones that if she couldn't perform the processes and "keep up with the line," she could lose her job. He also said that she should be able to keep up with two temporary male employees that had just completed training on the procedures. Id. at 143 (Doc. #20-1 at 37). Jones stated that her hands, which were swollen, were hurting her.

9

*Id.*; Branson Dep. at 23 (Doc. #15-5 at 3). Branson told Jones that if her hands were preventing her from doing her job, she should go to medical. Branson Dep. at 23 (Doc. #15-5 at 3). Jones pushed her gloves at him and said, "You go to hell, Jamie Branson." Jones Dep. at 141 (Doc. #20-1 at 36). She then went on her break, but came back and said to Branson and Parker, "I'm going to the fucking nurse."[9] *Id.*

Jones then went to see the nurse because of her swollen hands. Jones Dep. at 142 (Doc. #20-1 at 37). She had not previously gone to the nurse for issues with her hands or asked to have any medical restrictions placed on her work because of them. *Id.* After meeting with the nurse, Jones met with Deb Vance, an Associate Relations representative, and was sent home afterwards. *Id.* at 132 & 144 (Doc. #20-1 at 34 & 37). Mike Martin, another representative from Associate Relations, called Jones the next day to go over the details of what had happened before she was sent home. *Id.* at 144-45 (Doc. #20-1 at 37). Martin informed Jones that she was to stay at home until Honda completed an investigation of the incident. *Id.*

According to Pam Jenkins, the Human Resources Unit Manager at the Anna Plant, Honda investigated Jones' actions on the day she was sent home and her past disciplinary issues. Jenkins Decl. (Doc. #15-8 at 1). After a review by

---

[9] Jones disputes whether she made several other profane comments, but she does not dispute that she made the comments quoted above. Jones Dep. at 141 (Doc. #20-1 at 138-141).

10

management, the Human Resources department and other committees, Jenkins agreed to terminate Jones. *Id.* According to Jenkins, she made the decision "based solely on Ms. Jones' conduct on February 9, 2011, and her past disciplinary issues," with no consideration of Jones' "sex, any alleged disability she had, any Family Medical Leave Act leave she had taken or any other protected class or category." *Id.* at 2.

On February 15, 2011, Mike Martin called Jones and informed her that Honda had terminated her employment, effective the day before. Jones Dep. at 146-47 (Doc. #20-1 at 38). Martin advised Jones of her right to appeal Honda's termination decision to either a panel of senior management or a panel of her associate peers. *Id.* Jones elected to have her termination reviewed by a panel of her peers. *Id.* The panel met on February 22, 2011, and Jones appeared to present her case. *Id.* at 152 (Doc. #20-1 at 39). According to Jones, Mike Martin told the board that her 2003 FMLA leave was "a very long leave" that should not have been approved, and that he believed that Jones' doctor would give her leave whenever she wished. *Id.* at 49-55 (Doc. #20-1 at 13-15). The panel voted to uphold Jones' termination, which then became final. *Id.* at 152 (Doc. #20-1 at 39).

## II.     PROCEDURAL BACKGROUND

On April 16, 2013, Jones filed suit in the Common Pleas Court of Shelby County, Ohio, against Honda, alleging disability discrimination under Ohio Rev.

11

Code § 4112.02(A) (First Claim for Relief); sex discrimination under Ohio Rev. Code § 4112.02(A) (Second Claim for Relief); 3) violation of the FMLA, 29 U.S.C. § 2601 *et seq.* (Third Claim for Relief); and a common law claim for intentional infliction of emotional distress (Fourth Claim for Relief). Doc. #2. Although stated as one claim, the First Claim for Relief alleged that Jones was discriminated both "because of" a disability and due to Honda's "failure to accommodate" her disability. Honda removed the case to this Court on May 23, 2013. Doc. #1.

On May 15, 2014, Honda filed a Motion for Summary Judgment, arguing that it was entitled to judgment as a matter of law on each of Jones' claims. Doc. #15. Jones filed a Response in Opposition to Honda's Motion for Summary Judgment on June 10, 2014. Doc. #18. On June 27, 2014, Honda filed a Reply Brief in Support of its Motion for Summary Judgment. Doc. #19. Accordingly, Honda's motion is fully briefed and ready for consideration by the Court.

## III.   STANDARD OF REVIEW - MOTION FOR SUMMARY JUDGMENT

When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving

12

party has demonstrated that no disputed issue of material fact exists, the burden shifts to the nonmoving party to present evidence of a genuine dispute of a material fact that is resolvable only by a jury. *Celotex*, 477 U.S. at 324. The nonmovant must "cit[e] to particular parts of materials in the record" to demonstrate the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A). However, it is not sufficient for the nonmoving party to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must "go beyond the pleadings" and present some type of evidentiary material that demonstrates the existence of a genuine dispute. *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Generalized assertions lacking the support of particularized citation required by Rule 56 do not suffice, as a court has no "obligation to 'wade through' the record for specific facts" in support of a party's arguments. *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108 (6th Cir. 1989)).

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477

13

U.S. at 322. Conversely, material facts in genuine dispute that "may reasonably be resolved in favor of either party" require denial of summary judgment in order to be properly resolved by a jury. *Anderson*, 477 U.S. at 250.

When ruling on a motion for summary judgment, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A court must avoid "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," as such are "jury functions" that are inappropriate to employ at the summary judgment stage. *Anderson*, 477 U.S. at 255.

## IV. **ANALYSIS**

Because direct evidence of discrimination is rare, "victims of employment discrimination are permitted to establish their cases through inferential and circumstantial proof." *Kline v. Tenn. Valley Auth.*, 128 F. 3d 337, 348 (6th Cir. 1997). The Court will analyze Jones' FMLA retaliation claim under the burden-shifting method established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (applying "tripartite burden-shifting framework" to FMLA retaliation claims based on circumstantial evidence); *Donald v. Sybra, Inc.*, 667 F.3d 757,

14

762 (6th Cir. 2012) (stating that the *McDonnell Douglas-Burdine* analysis applies

to both interference and retaliation claims under the FMLA).

The *McDonnell Douglas-Burdine* burden-shifting analysis unfolds in three

steps:

> First, the plaintiff has the burden of proving by the preponderance of
> the evidence a prima facie case of discrimination. Second, if the
> plaintiff succeeds in proving the prima facie case, the burden [of going
> forward] shifts to the defendant "to articulate some legitimate,
> nondiscriminatory reason for the employee's rejection." Third, should
> the defendant carry this burden, the plaintiff must then have an
> opportunity to prove by a preponderance of the evidence that the
> legitimate reasons offered by the defendant were not its true reasons,
> but were a pretext for discrimination.

*Burdine*, 450 U.S. at 252-53 (citing and quoting *McDonnell Douglas*, 411 U.S.

792, 802, 804 (1973)) (citations omitted).

This framework is also appropriate for the analysis of Jones' state law

claims of sex discrimination and disability discrimination premised on the theory

that she was terminated because of a disability. *See Starner v. Guardian Indus.*,

758 N.E. 2d 270 (Ohio Ct. App. 2001) (citing *Byrnes v. LCI Comm'n Holdings Co.*,

672 N.E.2d 145 (Ohio 1996), and applying *McDonnell Douglas-Burdine* analysis to

a sex discrimination claim brought under Ohio Rev. Code § 4112.02(A)); *Ames v.

Ohio Dep't of Rehab. & Corr.*, 23 N.E.3d 162, 2014-Ohio-4774 (Ohio Ct. App.

2014) (applying *McDonnell Douglas-Burdine* to a disability discrimination claim

brought under Ohio Rev. Code § 4112.02(A)). However, the *McDonnell Douglas-

Burdine* burden-shifting analysis does not apply to Jones' disability discrimination

claim based on Honda's alleged failure to accommodate her disability. *Shaver v.*

15

*Wolske & Blue*, 742 N.E.2d 164, 171 (Ohio Ct. App. 2000) (citing *Bultemeyer v.*

*Fort Wayne Comm. Sch.*, 100 F.3d 1281, 1283-84 (7th Cir. 1996)); *see also*

*Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (citing

*Bultemeyer* and explaining that "claims premised upon an employer's failure to

offer a reasonable accommodation necessarily involve direct evidence (the failure

to accommodate) of discrimination").

The Sixth Circuit has described the particular application of *McDonnell*

*Douglas-Burdine* to an employment discrimination claim in the summary judgment

context as follows:

> On a motion for summary judgment, a district court considers whether
> there is sufficient evidence to create a genuine dispute at each stage
> of the *McDonnell Douglas* inquiry. The court first determines if a
> plaintiff has put forth sufficient evidence for a reasonable jury to find
> her to have met the prima facie requirements, including whether she
> has met the legitimate expectations of her employer. It performs the
> same function with respect to defendant's production of evidence,
> and again for the plaintiff's response to that production.

*Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000) (reversing

grant of summary judgment dismissing teacher's sex discrimination claims brought

under Title VII and Ohio Rev. Code § 4112).

With the foregoing principles in mind, the Court will first examine the

undisputed evidence to determine if Jones can state a prima facie case of

discrimination "because of disability." Second, the Court will consider Jones'

"failure-to-accommodate" disability discrimination claim, which will be analyzed

without applying the *McDonnell Douglas-Burdine* framework. Third, the Court will

turn to the claim of sex discrimination.  Fourth, Jones' claim of FMLA retaliation will be considered.  Finally, the Court will consider her common law claim of intentional infliction of emotional distress.  If there is a genuine dispute of material fact over an element of any of Jones' claims at any stage of the analysis, the Court will be unable to enter summary judgment on that claim.

### A.    Discrimination "Because of" Disability under Ohio Rev. Code § 4112.02 (First Claim for Relief)

Although presented as one Claim for Relief in her Complaint, Jones' disability discrimination claim relies on two theories: 1) Honda terminated her because of her disability; and 2) the company failed to accommodate her disability. Doc. #2 at 2-3.  As mentioned, Court will first consider the discrimination "because of disability" claim, and then it will consider the "failure-to-accommodate" claim.  According to Honda, the claim fails under either theory as a matter of law because Jones' back pain does not qualify as a disability.  Doc. #15 at 23-25.

In her Response, Jones counters that Honda has downplayed her "severe and ongoing" medical issues, and cites to numerous exhibits culled from her medical records.  Doc. #18 at 9-10.  She claims that these records demonstrate that she has had "a long record of disabling impairments." *Id.* at 10.

Honda's Reply Brief points out that Jones' Response fails to address its argument that she does not qualify as disabled under the law.  Doc. #19 at 10.

17

According to Honda, Jones' assertion that she has a record of an impairment fails to address the legal requirement that the impairment in question must "substantially limit one or more major life activities." *Id.*

### 1. A Prima Facie Case of Discrimination "Because Of" Disability under Ohio Rev. Code § 4112.02(A)

Ohio Rev. Code § 4112.02(A) makes it unlawful for an employer to terminate an employee "because of . . . disability" without just cause. Ohio law requires a plaintiff to demonstrate the following "three essential elements" to state a prima facie case of disability discrimination: "(1) the claimant had a disability, (2) the defendant took an adverse employment action, at least in part, because the plaintiff had the disability, and (3) the claimant, while having a disability, could safely and substantially perform the essential functions of the job in question." *Wallace v. Mantych Metalworking*, 937 N.E.2d 177, 183, 2010-Ohio-3765 (Ohio Ct. App. 2010) (citing *Tibbs v. Ernst Enter.*, 2009-Ohio-3042, 2009 WL 1813776 (Ohio Ct. App. 2009)).

Under Ohio law, the first element of a prima facie case of disability discrimination requires the plaintiff to show that she has a disability. *Wallace*, 937 N.E.2d at 183. Whether the undisputed evidence demonstrates that Jones did not have a disability, as Honda asserts, requires parsing the term's definition under Ohio law. The statute defines the term "disability" in three ways:

> [1] a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's

18

self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; [2] a record of a physical or mental impairment; [3] or being regarded as having a physical or mental impairment.

Ohio Rev. Code Ann. § 4112.01(A)(13).

A physical impairment may include "[a]ny physiological disorder or condition" that affects the body's "musculoskeletal" system. *Id.* § 4112.01(A)(16)(a)(i). In *Wallace*, an Ohio Court of Appeals had "little difficulty finding" that "evidence of back trouble," including "surgery and rehabilitation," constituted a physiological disorder of the musculoskeletal system that qualified as a physical impairment under the statutory definition. 937 N.E.2d at 184. Although Jones does not appear to have had back surgery, the undisputed evidence before the Court demonstrates that she has suffered from physiological difficulties related to her back since 1983, and has undergone physical therapy as a result. Jones Dep. at 30-31 (Doc. #20-1 at 9), Ex. 50-54 (Doc. #18-3 at 2). Although there are evidentiary gaps in the chronology of her back pain over the last thirty years, the record does show that she underwent treatment for back and neck pain in 1983, 1989, and during her years at Honda, including the months immediately preceding her termination. *Id.*; Def. Ex. C (Doc. #18-3). In short, the medical history in the record supports the allegation in her Complaint that "she suffers from issues with the discs in her back which cause sciatic nerve problems and require epidural shots." Doc. #2 at 3. As in *Wallace*, the Court has little difficulty finding that the evidence demonstrates that Jones suffered from a

19

physiological disorder of the musculoskeletal system, and, therefore, a physical impairment as defined by the Ohio statute.

However, to establish a prima facie case of disability discrimination, being disabled requires more than having a physical impairment. The physical impairment must also "substantially limit[] one or more major life activities" of the plaintiff. Ohio Rev. Code Ann. § 4112.01(A)(13). Federal regulations and case law interpreting the Americans with Disabilities Act ("ADA") may provide "guidance" when interpreting the Ohio anti-discrimination statute. *Columbus Civ. Serv. Comm. v. McGlone*, 697 N.E.2d 204, 207, 1998-Ohio-410 (Ohio 1998). The federal regulation defining "substantially limits" states that:

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1)(ii).

Under the regulation, "[m]ajor life activities include, but are not limited to . . . performing manual tasks . . . walking, standing, sitting, reaching, lifting, bending . . . and working[.]" *Id.* § 1630.2(i)(1)(i). Neither "substantially limits" nor "major life activity" are to be interpreted as imposing "demanding standard[s] for disability." *Id.* §§ 1630.2(i)(2) & 1630.2(j)(1)(i). When Congress passed the ADA Amendment Acts of 2008 ("ADAAA"), it amended the ADA to include

20

specific rules of construction for defining a disability. ADA Amendments Act of 2008, Pub. L. 110-325; 42 U.S.C. § 12102(4). These rules of construction state that definitions of disability are to be drawn "in favor of broad coverage of individuals . . . to the maximum extent permitted" by the statute. 42 U.S.C. § 12102(4)(A). Therefore, when analyzing whether an impairment "substantially limits" an individual's major life activity, courts should interpret that phrase in accordance with the findings and purposes of the ADAAA. *Id.* § 12102(4)(B). When it passed the ADAAA, Congress intended to "state a broad scope of protection to be available under the ADA" and expressly rejected the "inappropriately high" standards for interpreting the term "substantially limits" articulated by the Supreme Court in *Sutton v. United Air Lines*, 527 U.S. 471 (1999) and *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002). Pub. L. 110-315.

In her Complaint, Jones alleges that the physical impairment of her back pain "substantially limited one or more major life activities, including sitting or standing for long periods of time, and repetitive motions." Doc. #2 at 3. Construing this allegation in Jones' favor, the Court considers "repetitive motion" to be a type of major life activity that falls under the category of "performing manual tasks." 29 C.F.R. § (i)(1)(i).

In her Response to Summary Judgment, however, Jones does not explain how her back pain substantially limited the major life activities of sitting, standing,

21

or performing manual tasks.  Instead, she makes the conclusory assertion that she "meets the definition of disabled based on her numerous and varied restrictions," and cites to a number of medical records attached as exhibits to her deposition. Doc. #18 at 10.  In spite of Jones' failure to connect the dots and explain how this evidence demonstrates that her back pain substantially limited her major life activities, the Court believes that a reasonable jury could review these records, find that a substantial limitation existed, and, as a consequence, conclude that Jones was disabled.  First, her doctor prescribed a restriction that did not allow her to perform repetitive movements with her right leg from November 18, 2010, until December 8, 2010, and for thirty days after her return to work after December 20, 2010.  Doc. #18-3 at 3 & 6.  This demonstrates a limitation on the major life activity of performing manual tasks by repetitive motion, and, by extension, the major life activity of working particular to Jones in her occupation at Honda.

Furthermore, the undisputed evidence demonstrates that she suffered from back pain that was acute enough for her to miss work once or twice a year during the seven years before her termination.  These periods included a sixteen-day period of leave in October, 2003 (Doc. #18-5 at 3); eight days of leave in February of 2005 (*Id.* at 5); treatment for hip pain associated with her back pain in December, 2005 (*Id.* at 7); five days of leave in October, 2006 (*Id.* at 8); leave for back pain between February 5-18 and February 20-26, 2008 (*Id.* at 9-10); and a six-day absence in March, 2010 (*Id.* at 11).  A review of this history demonstrates

22

that Jones' physical impairment of back pain sometimes prevented her from working for weeks at a time. This observation is in accord with the ADA's definition of disability, which states that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C.A. § 12102. A reasonable jury could conclude that this constituted a substantial limitation on the major life activity of working. The Court considers the foregoing evidence sufficient to state a prima face case of disability, particularly under the non-onerous standards set forth under the ADA after passage of the ADAAA in 2008.[10]  *See* Pub. L. 110-325.

The clear intent of Congress expressed in the ADAAA requires the Court to reject Honda's argument that the more onerous *Sutton* and *Toyota* standards apply to the consideration of whether Jones' physical impairment imposed a substantial limitation on her major life activities. The Court also must reject Honda's assertion that, as a matter of law, "back pain that prevents an individual from performing

---

[10] Because the Court concludes that Jones can state the first element of her prima facie case under the first definition of disability set forth under Ohio Rev. Code Ann. § 4112.01(A)(13), it need not consider whether she can show she is disabled under the statutory alternatives of "a record of a physical or mental impairment[] or being regarded as having a physical or mental impairment." Furthermore, although Jones's Complaint made the conclusory allegation that she was "perceived by" her employer as disabled, her Response to Honda's Motion for Summary Judgment fails to address the statute's "regarded as" means of establishing disability. The Court interprets this omission as an abandonment of Jones' "perceived by" or "regarded as" theory of disability. *See Dage v. Time Warner* Cable, 395 F. Supp. 2d 668, 682 (S.D. Ohio 2005) (finding that the plaintiff had "abandoned any alternative theory of relief based on perceived disability" after failing to respond to the defendant's pertinent summary judgment arguments on that theory).

repetitive tasks or lifting objects does not constitute a disability[.]"  Doc. #15 at

25.  In support of these positions, Honda cites only to cases that either predate the

ADAAA, or apply the pre-amendment standard of construction to a set of facts

that arose before its passage.  Pub. L. 110-315; *see* Doc. #15 at 24-25 (citing,

*e.g.*, *Hull v. Astro Shapes, Inc.*, 2011-Ohio-1656, 2011 WL 1258706 (Ohio Ct.

App. Mar. 25, 2011) and *Hall v. Eastman Chem Co.*, 136 F. App'x 730 (6th Cir.

2005)).  For example, in *Hull*, an Ohio Court of Appeals applied the *Toyota*

standard requiring that "that the term 'substantially limits' must be 'interpreted

strictly to create a demanding standard for qualifying as disabled' under the ADA"

to facts that occurred prior to 2008.  2011-Ohio-1656 ¶ 58.  The court

acknowledged that the *Toyota* standard had been "superseded by statute,"

although the ADAAA did not apply to the pre-amendment set of facts before it.  *Id.*

Similarly, *Hall* involved a cause of action that accrued prior to the passage of the

ADAAA, as the Sixth Circuit issued the opinion in 2005.  136 F. App'x 730.  Here,

in contrast to both cases, Honda terminated Jones two years after the January 1,

2009, effective date of the ADAAA.  Pub. L. 110-325 § 8.  Accordingly, she is

entitled to have the "term 'substantially limits' interpreted consistently with the

findings and purposes of the ADA Amendments Act of 2008."  42 U.S.C.

§ 12102(4)(B).  For the reasons set forth above, a reasonable jury could conclude

that Jones was disabled under the ADA, and she can, therefore, state the first element of her prima facie case.[11]

The second element of a prima facie case of disability discrimination under Ohio law requires the plaintiff to show that "the defendant took an adverse employment action, at least in part, because the plaintiff had a disability[.]" *Wallace v. Mantych Metalworking*, 937 N.E.2d 177, 183, 2010-Ohio-3765 (Ohio Ct. App. 2010). Honda argues that Jones cannot satisfy the second element of her prima facie case because she cannot show that she was disabled at the time of her termination, and because there is no evidence that establishes a causal connection between Jones' alleged disability and her termination. Doc. #15 at 28-30.

In her Response, Jones argues that the close proximity in time between her requests for accommodation and medical leave, Honda's failure to follow her medical restrictions, and Martin's comments to the panel that reviewed her

---

[11] Jones also cites to medical records that document problems with her wrists and hands. However, such records cannot support, and are irrelevant to, her disability claim. As pleaded in the Complaint, her "disabling condition" arose solely "from issues with the discs in her back," with no reference to any other physical impairment. Doc. #2 at 2-3. Although Jones now argues that any one of "her numerous and varied restrictions" demonstrates that she is disabled, she cannot assert disability based on a medical condition not mentioned in her Complaint in an effort to resist summary judgment. Doc. #18 at 10; *see Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (rejecting plaintiff's attempt "to expand its claims to assert new theories," which may not be presented for the first time "in response to summary judgment or on appeal").

25

termination demonstrates a genuine issue of fact as to whether she was terminated because of her disability. Doc. #18 at 11-12.

In its Reply, Honda points out that Jones' argument relies on the same evidence to establish both prima facie cases of disability discrimination and FMLA retaliation. Doc. #19 at 10. According to Honda, Jones' "actions of creating an intimidating, hostile, and offensive work environment" were "intervening actions" that severed any inference of causation between her accommodation requests and her termination. *Id.* at 11-12.

A reasonable jury could conclude that sufficient evidence exists to demonstrate the causal relationship required to establish the second element of Jones' prima facie case. The temporal proximity between Jones' accommodation requests, Honda's alleged failure to comply with the requests, and her termination gives rise to an inference of causation. In *Bryson v. Regis Corp.*, 498 F.3d 561, 577-78 (6th Cir. 2007), the Sixth Circuit held that two days' interval between an employee's accommodation request and her termination was sufficient to demonstrate a causal connection. To be sure, the timeline in this case is somewhat longer. Because of her back condition, Jones was to be restricted from making repetitive motions or using a foot pedal with her right leg, for the period of December 20, 2010, until January 18, 2011. Jones Dep. at 116-20 (Doc. #20-1 at 30-31); Def. Ex. T (Doc. #15-3 at 10). She testified that Honda failed to comply with these restrictions during the same time period. Jones Dep. at 120-21

26

(Doc. #20-1 at 31).  Honda terminated her employment twenty-seven days later, on February 14, 2011.  *Id.* at 147 (Doc. #20-1 at 38).  Even when dated from the last day of the period of restrictions, this period is twenty-five days longer than the two-day period in *Bryson* that allowed an inference of causation.  Nevertheless, bearing in mind the non-onerous burden on the plaintiff to make out a prima facie case at the first stage of the *McDonnell Douglas-Burdine* analysis, the Court accepts this temporal proximity as a sufficient basis to state the second element of a prima facie case.

Honda's arguments to the contrary are not persuasive.  First, the Court does not agree that Jones cannot demonstrate that she was disabled at the time of her termination.  According to Honda, under *Vanderlee v. Donahoe*, 508 F. App'x 425, 428 (6th Cir. 2012), Jones must show that she was disabled at the time of her termination, which she cannot do because her medical restrictions were no longer in place at that time.  In *Vanderlee*, the Sixth Circuit stated that the plaintiff was required to "show that she was disabled at the time of the adverse employment action" to establish the *first* element of her prima facie case showing that "she had a disability."  *Id.* (*Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 884 (6th Cir. 1996)).  *Vanderlee* does not, therefore, impose such a requirement on the second element of Jones' prima facie case, as Honda asserts.  More importantly, both *Vanderlee* and *Kocsis* concerned causes of action that arose before the passage of the ADAAA.  As discussed previously, these amendments significantly relaxed the

27

requirements for defining "disability" under the ADA.  In Jones' case, the requirement imposed by *Vanderlee* and *Kocsis* to prove that one is disabled at the time of an adverse employment action cannot be reconciled with the ADAAA's explicit "rule of construction" stating that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."  This rule of construction was not part of the definition of "disability" as it existed in the statute or regulations that applied in *Vanderlee* and *Kocsis*.  *See* ADA Amendments Act of 2008, Pub. L. 110-325 *and* Regulations To Implement the Equal Employment Provisions of the [ADA], as Amended, 76 Fed. Reg. 16,978-01, 16,990 (Mar. 25, 2011).  "Under the ADA as amended, the definition of an impairment that substantially limits a major life activity will obviously be broader than captured by prior measures . . . and conditions that are episodic or in remission are substantially limiting if they would be when active."  76 Fed. Reg. at 16,990.  Thus, the fact that a plaintiff's physical impairment does not substantially limit a major life activity at the time of an adverse employment action does not negate the plaintiff's ability to show that she is "disabled," based on an episodic condition such as Jones' chronic back pain.

Citing *Parks v. City of Chattanooga*, 74 F. App'x 432 (6th Cir. 2003), Honda also argues that Jones' intervening action of engaging in hostile and inappropriate behavior severs any inference of causation that arises based on temporal proximity.  This argument imports Honda's legitimate and non-

discriminatory reason for firing Jones from the second stage into the first stage of the *McDonnell Douglas-Burdine* analysis. At the second stage, Honda's burden is only to *produce* a legitimate, non-discriminatory reason for the termination. *Burdine*, 450 U.S. at 254. Considering what *effect* that reason might have on Jones' prima facie case gives inappropriate weight to Honda's reason before it has even been produced. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000) (cautioning against "improperly conflating the distinct stages of the *McDonnell Douglas* inquiry" by "using [the employer's] 'non-discriminatory reason' as a predicate for finding [that plaintiff] failed to make a prima facie case"). In *Parks*, the police officer plaintiff argued that his termination was causally connected to his complaints about a lack of minority representation on the police force. 74 F. App'x at 438. The Sixth Circuit accepted the plaintiff's "argument that the timing of events [was] suspect," describing it as "facially valid." *Id.* at n.5. The court also stated that "temporal proximity alone . . . does not support an inference of retaliatory discrimination, particularly where, as here, an employee's discharge is readily explainable on non-retaliatory grounds that *have not been shown to be pretextual*." *Id.* at 438 (emphasis added). This suggests that the plaintiff was provided with the opportunity to show pretext before the court ultimately concluded that his intervening act of committing sexual assault severed any inference of causation based on temporal proximity. This Court will provide Jones with the same opportunity, and accepts the inference of causation that

29

arises from the temporal proximity between her accommodation requests, Honda's alleged failure to comply with the requests, and her termination as sufficient to satisfy the second element of her prima facie case.[12]

The third element of a prima facie case of disability discrimination requires the plaintiff show that "while having a disability, [she] could safely and substantially perform the essential functions of the job in question." *Wallace v. Mantych Metalworking*, 937 N.E.2d 177, 183, 2010-Ohio-3765 (Ohio Ct. App. 2010). Honda has not challenged Jones' ability to establish this element. A reasonable jury could find that this element is satisfied, based on Jones' lengthy tenure at Honda.

For the foregoing reasons, the Court concludes that Jones can establish a prima facie case of discrimination "because of" disability under Ohio Rev. Code § 4112.02.

### 2. *A Legitimate, Nondiscriminatory Basis for Termination*

At the second stage of the *McDonnell Douglas-Burdine* analysis, Honda must produce a legitimate, nondiscriminatory reason for terminating Jones. *McDonnell*

---

[12] Honda also cites *Francis v. Davis H. Elliot Const. Co.*, No. 3:12-CV-87, 2013 WL 941527 (S.D. Ohio Mar. 11, 2013), wherein the Court held that the plaintiff could not state a prima facie case of race-based retaliation after he complained of an race-motivated incident, due to the intervening act of committing sexual harassment that severed any inference of causation based on temporal proximity. Although the Court held that the plaintiff could not state a prima facie case, its analysis nevertheless moved through all stages of the *McDonnell Douglas-Burdine* framework and considered all the plaintiff's arguments for pretext. *Id.* at *16-17.

*Douglas*, 411 U.S. at 802. As discussed previously, Honda states that it made the decision to terminate Jones "based solely on [her] conduct on February 9, 2011, and her past disciplinary issues," with no consideration of "sex, any alleged disability she had, any Family Medical Leave Act leave she had taken or any other protected class or category." Jenkins Decl. (Doc. #15-8 at 2). Hostile or offensive conduct, including the use of profanity directed at a supervisor, qualifies as a legitimate, nondiscriminatory basis for terminating an employee. *E.g.*, *Hoffman v. Prof'l Med. Team*, 394 F.3d 414, 417, 420 (6th Cir. 2005) (upholding district court's conclusion that employer's stated reasons of "unprofessional conduct while working, discourteous conduct toward other employees, use of obscene language toward other employees, and violation of the company's anti-violence policy" constituted legitimate, nondiscriminatory reasons for terminating employee who replied with obscenities to supervisor who denied request for FMLA leave). By pointing to Jones' hostile and offensive conduct, Honda fulfills its burden of production at the second stage of the *McDonnell-Douglas* analysis.

### 3. Pretext

At the third stage of the *McDonnell-Douglas* analysis, the burden shifts back to Jones, who must prove by a preponderance of the evidence that the employer's reasons are pretextual. *Burdine*, 450 U.S. at 253. To survive summary judgment, the plaintiff must "produce[] evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an

inference of discrimination at trial." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). Conversely, "summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation." *Chen*, 580 F.3d at 400 n.4 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). The plaintiff may prove pretext by showing that the reasons offered by the defendant 1) had no basis in fact; 2) were not the actual reasons for the defendant's actions; or 3) were an insufficient basis for the defendant's actions. *Manzer v. Diamond Shamrock Chems.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (*overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)). Jones sets forth four arguments to demonstrate pretext.

First, Jones argues that Martin's statement "if you're hurt, you can't work. We don't want you here," made a month or two before she was terminated while she was walking into work, demonstrates pretext. Doc. #18 at 13. Jones Dep. at 148-151 (Doc. #20-1 at 38-39). Even when viewed in a light most favorable to Jones, it is difficult to see how a reasonable jury could interpret this statement as an expression of animus. Martin made the comment during a period when Jones was having trouble keeping up on the production line after she had returned from her December, 2010, FMLA leave. No conscientious employer would want an injured employee who had not sufficiently recovered from a medical condition to continue working, and it is difficult to interpret the comment as anything but an

32

expression of such concern.  The Court does not believe that this comment can reasonably be interpreted as Martin expressing a desire that Jones should quit or be fired because of an injury, a disability, or her prior use of FMLA leave.  Jones does not explain how this comment supports an inference of pretext that is relevant to any of her claims in particular, stating only that it "concern[s] the animus of Defendant."  Doc. #18 at 13.  The Court is at a loss as to how pretext concerning her sex or disability discrimination claims arises from this statement. The only claim it appears at all related to is the FMLA claim.  However, for the foregoing reasons, no reasonable jury could conclude that it casts doubt on Honda's proffered reason for terminating Jones.

Second, Jones argues that positive performance reviews during her tenure with Honda demonstrate that its reasons for firing her do not "line up with the facts."  Doc. #18 at 14.  In particular, she points to her January 19, 2011, performance review in which she received an overall rating of "meets expectations" and "exceeds expectations" in "teamwork" and "associate involvement/initiative."  Id.  However, this review occurred immediately before the February 9, 2011, incident that prompted her termination.  Thus, all the January 19, 2011, performance review demonstrates is that her behavior during the previous review period had not given Honda cause to discipline her.  Furthermore, Jones admits that she had previously received discipline for creating a "hostile work environment."  Id.  Her suggestion that Honda suddenly fabricated a profile

33

of her behavior to conform to its reasons for firing her is not based on the record, and she does not, therefore, demonstrate pretext by pointing to her previous performance reviews.

Third, Jones accuses Honda of inventing "shifting" reasons for her termination, asserting that Honda "cites a series of disciplinary actions taken against [her] for quality and attendance." Doc. #18 at 14-15. However, Honda did not cite quality or attendance concerns as a reason for firing Jones, stating in multiple places in its Memorandum that she was terminated for creating an intimidating, hostile, and offensive work environment.[13]  Doc. #15 at 17, 21, 23, 30-32, 34. Honda clearly stated: "Although Jones' coaching and counseling history on all these issues is concerning, Jones' history of creating an intimidating, hostile, and offensive work environment is of particular significance, because her violation of that policy is what ultimately led to her termination."  Doc. #15 at 17. This assertion is corroborated by Pam Jenkins' Declaration, in which she stated that the termination decision was "based solely on Ms. Jones' conduct on February 9, 2011, and her past disciplinary issues," with no mention of quality or attendance.  Jenkins Decl. (Doc. #15-8 at 1).  The company has been clear and

---

[13] As noted in footnote 4, Honda provided a catalog of Jones' unrelated disciplinary issues in the fact section of its Memorandum, an unfortunately common, and to this Court at least, unpersuasive briefing tactic by employers seeking summary judgment on employment discrimination claims.

consistent about its reasons for terminating Jones, and her effort to paint them as "shifting" has no basis in the record.

Fourth, Jones argues Honda cannot rely on the honest belief doctrine to avoid a finding that its reasons were pretextual, asserting that "Honda has not pointed to any specific facts" that justified firing her. Doc. #18 at 13-14. Under the honest belief doctrine, an employer will overcome the employee's assertion of pretext if it can show that it exercised "reasonable reliance on the particularized facts that were before it at the time the decision was made." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). Jones' argument ignores the facts in the record regarding her behavior that Honda cites to as justification for her termination: her behavior on February 9, 2011, when she yelled profanities at Branson and Parker. Jenkins Decl. (Doc. #15-8 at 1). As Honda points out, Jones does not dispute this account of her behavior. Jones Dep. at 138-141 (Doc. #20-1 at 87).

Honda may have relied on reports of this encounter when it fired her. Nevertheless, because the Court identifies genuine issues of material fact concerning Mike Martin's role in Jones' termination and the motivation for the comments he made before the appeal board upholding her termination, Honda cannot rely on the honest belief doctrine to avoid casting doubt on its reasons for firing Jones. As set forth below, these issues create genuine issues of material

fact regarding "the actual reasons" behind Honda's decision to fire Jones. *Manzer*, 29 F.3d at 1084.

> Jones testified that:
>
> on the day of her appearance before [the] peer review committee which upheld her termination, Mike Martin of Honda's management brought up an earlier leave in 2003 as one that should not have been approved [as FMLA leave,] [asserting that] she took off [due to] the death of the mother of the man that she was with at the time. Plaintiff testified, however, that her back was swollen at the time and that her doctor was treating her for swollen left and right hips. (Jones Tr. at p. 48.) This actual leave took place in 2003, but it was brought up by Martin at the termination meeting to prejudice the peer review committee. (Jones Tr. at p. 49).

Doc. #18 at 18.

Honda dismisses Martin's statements, asserting that "there is no evidence that this alleged comment was made to or considered by Honda's decision makers when they made the decision to terminate Jones," and the decision to terminate her was made before Martin made the comments. Doc. #19 at 13. Honda also asserts that Martin "was not responsible for the *actual decision* to terminate Jones' employment" and simply "performed ministerial tasks such as informing Jones of the disciplinary decision" and processing paperwork. *Id.* n. 18. The problem with both of these assertions is that the "Human Resources Checklist for Investigation and Corrective Action," attached as Exhibit A to the Declaration of Pam Jenkins, creates a genuine issue of material fact as to whether Martin was involved in the decision to terminate Jones. Doc. #15-8 at 3. The checklist states that the "Final Decision" of "Separation" was made on February 14, 2011, and it

was signed by Mike Martin on that date. This occurred eight days before the February 22, 2011, meeting of the appeals board. The second page of the same exhibit does support Honda's assertion that Martin was involved in the "ministerial" act of notifying Jones of the separation, because it contains a checklist entitled "Communication to Associate of Separation Decision," and was also signed by Martin. However, that page is dated February 22, 2011. His signature on the form that appears to memorialize the decision to terminate Jones calls into question Honda's assertion that his role was merely one of "processing" her termination. For these reasons, there is a genuine issue of material fact regarding Martin's role in Jones' termination.

Because Martin's role is in dispute, his comments before the appeal board reviewing Jones' termination deserve greater scrutiny. The comments in question were incongruous and not relevant to the question before the appeals board. If, as Honda asserts, its sole reason for terminating Jones was her inappropriate and hostile behavior, Martin's comments regarding Jones' prior use of FMLA leave and accusing her of having an excuse-providing doctor would be irrelevant to the decision the board was reviewing.

Furthermore, once the inference is made in Jones' favor that Martin was, in fact, involved in the decision to terminate her, the incongruity and irrelevancy of his remarks call into question his motivation for making them. Two competing explanations emerge. First, the remarks expressed Martin's subjective disapproval

37

of Jones' use of FMLA leave, and, while irrelevant to the proceedings, were made to provide the appeals board with an additional reason to uphold Jones' termination. This explanation creates a genuine issue of material fact regarding the actual reasons that motivated the termination decision, as a reasonable jury could interpret the comment as reflecting both disapproval of Jones' use of FMLA leave and a desire to retaliate against her for its use.

Second, a reasonable jury could also conclude that the comments reflected the thoughts of a decision maker who did not believe that Jones' back pain constituted a valid reason for her absences, which suggests a possible animus against her because of her physical impairment. This creates a genuine issue of material fact regarding this decision maker's reasons for ultimately deciding to terminate Jones after years in which her physical impairment episodically occurred and prevented her from working.

To be sure, the foregoing explanations for Martin's comments appear to be mutually exclusive, but they cannot be reconciled on the undeveloped record before the Court. Jones has inexplicably chosen not to depose Martin. This creates a gap in the record and a lack of context that the parties may wish to remedy, which would allow them to then file renewed motions for summary judgment. In any case, on the record presently before the Court, the issues raised by Martin's comments raise genuine issues of material fact that a reasonable jury could find are indicative of pretext.

Finally, the Court returns to Honda's argument that Jones' intervening act of engaging in hostile and inappropriate behavior severs any inference of causation that arises based on temporal proximity.  In contrast to the plaintiff in *Parks v. City of Chattanooga*, 74 F. App'x 432, 435-38 (6th Cir. 2003), Jones has demonstrated pretext on this claim.  *See id*. (where no evidence of pretext existed, the plaintiff's actions severed any inference of causation based on temporal proximity).  Here, Martin's statements revive the inference of causation otherwise broken by the timing of Jones' behavior because a reasonable jury could conclude that he harbored the sentiments for an extended period of time.  Based on his reference to leave that Jones had taken in 2003, a reasonable jury could conclude that he had felt this way for years.  Because of these genuine issues of material fact, a reasonable jury could conclude that Honda's stated reasons for terminating Jones were not the "actual reasons for [its] actions," which is sufficient for Jones to demonstrate pretext under *Manzer*.  *Manzer v. Diamond Shamrock Chems.*, 29 F.3d 1078, 1084 (6th Cir. 1994).  A jury, and not the Court, should weigh the persuasiveness of Honda's reason for firing Jones against the inferences that arise from Martin's statements.  For these reasons, Honda is not entitled to summary judgment on this claim simply based on the timing of Jones' behavior.

In conclusion, based on genuine issues of material fact discussed above, Jones has demonstrated sufficient pretext to avoid summary judgment on her claim based on discrimination "because of" disability under Ohio Rev. Code

39

§ 4112.02 (First Claim for Relief).  Honda's motion is, therefore, overruled with respect to said claim.

### B. Disability Discrimination based on a "Failure to Accommodate" under Ohio Rev. Code § 4112.02 (First Claim for Relief)

Jones' disability discrimination claim alleges that she was on medical restrictions during the period before her termination, and that Honda failed to accommodate her disability by adhering to those restrictions.  Doc. #2 at 3. Honda argues that this claim fails because the undisputed evidence demonstrates that it accommodated Jones' medical restrictions when it allowed her to work on two production line processes that did not require the use of a foot pedal with her right leg.  Doc. #15 at 27.  In her Response, Jones points to her deposition testimony stating that she was, in fact, required to work an assembly line process with a foot pedal in a manner that violated her medical restrictions, and that Honda could have reasonably accommodated her condition by assigning her to a different process.  Doc. #18 at 11.  Honda's Reply asserts that because Jones could have used the foot pedal with either leg, it did not fail to accommodate the only medical restriction of which it was aware.  Doc. #19 at 6.

As discussed, under Ohio law, a claim of disability discrimination premised on an employer's failure to accommodate is not analyzed under the *McDonnell Douglas-Burdine* burden-shifting analysis.  *DeCesare v. Niles City Sch. Dist. Bd. of Educ.*, 2003-Ohio-5349, ¶ 23, 798 N.E.2d 655, 660 (Ohio Ct. App. 2003).  This

suggests that to survive summary judgment, a plaintiff need not show pretext, but must only point to some evidence that demonstrates a genuine dispute of material fact as to whether the employer reasonably accommodated her disability. Under the failure-to-accommodate theory, a plaintiff must show "(1) that he was disabled; (2) that his employer was aware of the disability; and (3) that he was an otherwise qualified individual with a disability in that he satisfied the prerequisites for the position and could perform the essential functions of the job with or without accommodation." *Pflanz v. Cincinnati*, 778 N.E.2d 1073, 1080, 2002-Ohio-5492 (Ohio Ct. App. 2002). "A plaintiff who has established that he is disabled for R.C. 4112.02 purposes may further establish a discrimination claim by showing that the employer has declined to make a reasonable accommodation to known disabilities if such accommodation would not cause undue hardship on the employer." *See Niles v. Natl. Vendor Servs, Inc.*, 2010-Ohio-4610, ¶ 27, 2010 WL 3783426 (Ohio Ct. App. 2007). As discussed, the Court has concluded that a reasonable jury could find that Jones was disabled under the definition set forth under Ohio Rev. Code Ann. § 4112.01(A)(13).

Furthermore, the Court finds that there is a genuine issue of material fact as to whether Honda accommodated Jones' disability. Honda argues that it accommodated Jones' medical restrictions by allowing her to work on two production line processes that did not require the use of a foot pedal with her right leg. Doc. #15 at 27. However, the undisputed evidence does not demonstrate

41

that Honda accommodated the medical restrictions prescribed by Jones' doctor when she returned from her leave in November and December, 2010. At that time, Dr. Gillis submitted a "Work Capacity" form that restricted Jones from making repetitive motions or using a foot pedal with her right leg from November 18 through December 8, 2010, and from December 20, 2010, until January 18, 2011. Jones Dep. at 113-20 (Doc. #20-1 at 29-31); Def. Ex. Q & Ex. T (Doc. #15-3 at 9-10). Dr. Gillis testified that these were the only restrictions he submitted to Honda. Gillis Dep. at 42-43 (Doc. #15-3 at 5). Jones also testified that Honda was notified of these restrictions. Jones Dep. at 118-119 (Doc. #20-1 at 31). Obviously, Honda does not dispute that it was aware of these restrictions, as the company asserts that it accommodated them. However, Jones testified that she did have to use her right leg on a lever on the two production line processes that she worked between December 20, 2010, and January 18, 2011. *Id.* at 122-23 (Doc. #20-1 at 32). She also testified that neither Jamie Branson nor Todd Parker complied with the restrictions: "Jamie did not have me on restrictions. I thought I was on restrictions . . . Todd Parker did not know when I went down to the other part of the line, did not know I was on restrictions." *Id.* at 120 (Doc. #20-1 at 31). Jones cannot testify as to what Todd Parker knew or did not know, which is categorically outside the realm of her personal knowledge. Fed. R. Evid. 602. Nevertheless, the Court draws the inference in her favor from this testimony that Parker did not comply with the restrictions when she worked

42

under him on the assembly line.  Thus, although Honda asserts that Jones could

have used her non-restricted foot to operate the pedal, the Court believes that

Jones' testimony to the contrary demonstrates a genuine issue of material fact

regarding Honda's accommodation.  *See Johnson v. Cleveland City Sch. Dist.*,

2011-Ohio-2778, ¶¶ 60-66 2011 WL 2409901 (Ohio Ct. App. June 9, 2011)

(reversing summary judgment where genuine issue of material fact existed as to

whether school district reasonably accommodated disabled teacher, based on

incongruity between teacher's testimony that she had applied for position that

would accommodate her disability and school district's assertion that she had not).

Because the *McDonnell-Douglas* framework does not apply to a failure-to-

accommodate claim brought under Ohio law, Jones is not required to demonstrate

pretext for this claim to survive summary judgment.  *DeCesare v. Niles City Sch.*

*Dist. Bd. of Educ.*, 2003-Ohio-5349, ¶ 23, 798 N.E.2d 655, 660 (Ohio Ct. App.

2003).  Accordingly, based on the genuine issue of material fact discussed above,

Honda is not entitled to summary judgment on Jones' First Claim for Relief, as

premised on a failure-to-accommodate theory.

### C.  Sex Discrimination under Ohio Rev. Code § 4112.02 – Prima Facie Case (Second Claim for Relief)

Jones has also brought a sex discrimination claim under Ohio Rev. Code

§ 4112.02(A) against Honda, alleging that "similarly situated male employees were

treated more favorably than [her] and retained their positions," and that she was

"replaced by a male individual."  Doc. #2 at 4-5.  Honda argues that she cannot state a prima facie case of sex discrimination because she cannot show that any similarly situated male employee was treated more favorably than she was.  Doc. #15 at 33-34.

In her Response, Jones contends that under the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), she is only required to show that sex was a motivating factor in taking an adverse employment action against her.  Doc. #18 at 15-16.  She points to a statement she made to the Ohio Department of Jobs and Family Services ("ODJFS") claiming that her supervisor, Jaime Branson, stated that two temporary male employees were able to keep up on the production line when she was not.  According to Jones, the statement is evidence of "animus" that "raises a material question of fact as to whether [her] sex was a motivating factor in her treatment by Honda."  *Id.* at 17.

In its Reply Brief, Honda makes several points.  First, by failing to identify a similarly situated worker who was treated more favorably than her, Jones has conceded that she cannot state a prima facie case for sex discrimination.  Doc. #19 at 14.  Second, Jones' statement to ODJFS is inadmissible and may not be considered on summary judgment.  *Id.* at 14-15.  Third, she "has improperly tried to change her sex discrimination claim from a single motive claim to a mixed motive claim," which is not viable under Ohio Rev. Code § 4112.02(A).  *Id.* at 14

44

n.1. Finally, Jones expressly disclaimed that she was pursuing anything but a single-motive sex discrimination claim during her deposition. *Id.*

Under Ohio law, it is unlawful for an employer to terminate an employee without just cause because of the employee's sex. Ohio Rev. Code § 4112.02(A). To establish a prima facie case of sex discrimination under Ohio law, a plaintiff must show that: "(1) that she is a member of a protected class, (2) that she was qualified for the position in question, (3) that she suffered an adverse employment action despite her qualifications, and (4) that she was treated less favorably than a similarly situated individual outside the protected class." *Birch v. Cuyahoga Cnty. Probate Court*, 880 N.E.2d 132, 139 (Ohio Ct. App. 2007). Here, Honda apparently concedes that Jones satisfies the first three elements of her prima facie case, as its argument only addresses her inability to identify any similarly situated male employee treated more favorably than her.

Assuming for the sake of argument the admissibility of Jones' letter to the ODJFS, it does not demonstrate that she was treated less favorably than any similarly situated male worker.[14] According to Jones, Branson told her that she "had been [at Honda] for 9 years [and] should be able to keep up and that there were two temporary men of younger ages that just signed off [on the same training] and were keeping up just fine." Def. Ex. H (Doc. #18-8 at 2). The mere

---

[14] As Honda points out, there are multiple evidentiary problems with Jones' letter to ODJFS as well. It is not authenticated, and it represents multiple layers of hearsay.

fact that Jones and the two men all worked on the same production line is insufficient to demonstrate that they were similarly situated.  "The parties to be compared must be similarly-situated in all respects," which means that "they 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it .'"  *Howell v. Summit Cnty.*, 2002-Ohio-5257, at ¶ 15, 2002 WL 31175262 (Ohio Ct. App. Oct. 2, 2002) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)); *Noday v. Mahoning Sheriff's Dep't*, 2005-Ohio-4682, ¶ 22, 2005 WL 2005 WL 2160785 (Ohio Ct. App. Sept. 8, 2005).  In *Noday*, for example, an Ohio Court of Appeals held that the female plaintiff and a male co-worker who "reported to the same supervisor, and had the same duties and responsibilities" were similarly situated because they "were also both accused of the same acts of misconduct, which consisted of falsifying matters during investigations." 2005-Ohio-4682 ¶ 23.  The female plaintiff was investigated for misconduct while the male was not.  *Id.* ¶ 15.  Here, in contrast, there is no indication in the record that either male worker on the production line ever "engaged in the same conduct" as Jones that led to her termination, such as using profanity and creating a hostile work environment, without suffering any resulting adverse action.  Because Jones cannot identify a similarly situated male worker,

46

she cannot state a prima facie case of sex discrimination under Ohio Rev. Code § 4112.02(A).

Furthermore, Jones cannot revive her claim by now attempting to recast it as a mixed-motive sex discrimination claim. As Honda points out, this Court has held that "the mixed-motive analysis is not available for discrimination claims brought under § 4112.02." *Francis v. Davis H. Elliot Constr. Co.*, No. 3:12–cv–87, 2013 WL 941527 at *8 (S.D. Ohio Mar. 11, 2013). In *Francis*, the Court reasoned that, unlike Congress when it amended Title VII in the Civil Rights Act of 1991, "the Ohio legislature has not amended Ohio Revised Code § 4112.02(A) to include claims where race is 'a motivating factor.'" Nor has the Ohio legislature amended the statute to allow claims where sex is a "motivating factor."

Even if Jones could have brought a mixed-motive sex discrimination claim under Ohio Rev. Code § 4112.02(A), she cannot simply assert it for the first time when responding to Honda's Motion for Summary Judgment. When a plaintiff "seeks to expand [her] claims to assert new theories, [she] may not do so in response to summary judgment or on appeal." *Bridgeport Music, Inc. v. VM Music Corp.*, 508 F.3d 394 (6th Cir. 2007). "To permit a plaintiff to do otherwise would subject defendants to unfair surprise." *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005). It was incumbent on Jones to file a Motion for Leave to Amend under Fed. R. Civ. P. 15(a) at an earlier point in

this litigation if she wished to pursue a mixed-motive sex discrimination claim under Title VII. *See Tucker*, 407 F.3d at 788-89.

Finally, Jones' own responses during her deposition, when queried about the nature of her sex discrimination claim, contradict the assertion that her claim is based on a mixed-motive theory. She was asked if "the basis" of her sex discrimination was "that Honda terminated you because you're a woman," and answered in the affirmative. Jones Dep. at 46 (Doc. #20-1 at 13). When asked if there were "any other claims that [she was] making as a part of that cause of action," she answered "no." *Id.*

For the foregoing reasons, the Court rejects Jones' attempt to assert a mixed-motive theory as a basis for stating a prima facie case of sex discrimination under Ohio Rev. Code § 4112.02(A). As discussed, she has failed to point to any evidence that Honda treated similarly situated male workers more favorably. She cannot, therefore, state a prima facie case of sex discrimination under Ohio Rev. Code § 4112.02(A), and Honda is entitled to summary judgment on the Second Claim for Relief set forth in the Complaint.

### D.   FMLA Retaliation under 29 U.S.C. § 2615(a)(2) – Prima Facie Case (Third Claim for Relief)

Congress passed the FMLA in order "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families . . . [and] to entitle employees to take reasonable leave for

medical reasons," whether for themselves or family members. 29 U.S.C.
§ 2601(b)(1)–(2). To further these goals, the FMLA gives an employee the right to
take a total of twelve weeks of leave during any twelve-month period "[b]ecause
of a serious health condition that makes the employee unable to perform the
functions of" his or her job. *Id.* § 2612(a)(1)(D).

The Sixth Circuit recognizes "two distinct theories of recovery under the
FMLA." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).
The first is the "interference" or "entitlement" theory, which makes it "unlawful for
any employer to interfere with, restrain, or deny the exercise of or the attempt to
exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). The
second theory of recovery involves "retaliation" or "discrimination" claims. These
arise under 29 U.S.C. § 2615(a)(2), which prohibits employers from discharging or
otherwise discriminating against individuals who oppose unlawful FMLA practices.
In this case, Jones has asserted only an FMLA retaliation claim. As discussed
previously, the *McDonnell Douglas-Burdine* burden-shifting analysis applies to an
FMLA retaliation claim that relies on indirect or circumstantial evidence. *E.g.*,
*Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

### 1.   *A Prima Facie Case of FMLA Retaliation*

To state a prima facie case of retaliation under the FMLA, a plaintiff must
show that 1) she availed herself of a right protected under the FMLA, 2) she
suffered an adverse employment action, and 3) a causal connection exists between

the adverse action and the exercise of her FMLA-protected right. *Edgar*, 443 F.3d at 508.

The parties do not dispute, and the Court agrees, that Jones satisfies the first two elements of the prima facie case. The first element is satisfied because Jones availed herself of the right to take FMLA leave on seventeen occasions during her nine-year tenure at Honda. The second element is satisfied because her February 14, 2011, termination unquestionably qualifies as an adverse employment action. *See Butler v. Owens-Brockway Plastics Prods., Inc.*, 199 F.3d 314, 317 (6th Cir. 1999) (describing termination as a "materially adverse action" under the FMLA).

Controversy arises with regards to the third element of the prima facie case, however. According to Honda, Jones cannot establish this element by relying solely on the temporal proximity between her FMLA leave and her termination. Doc. #15 at 36-37. In response, Jones attempts to establish the inference of a causal connection between the FMLA leave she took and her termination by pointing to two pieces of evidence. First, as with her disability discrimination claim, she argues that a causal connection can be inferred from the temporal proximity between the date of her final FMLA leave and the date of her termination. Doc. #18 at 18. Second, she cites to the previously discussed comments made by Mike Martin to the Associate Review Panel during the appeal of her termination: 1) that her FMLA leave in 2003 should never have been

50

approved; and 2) that she had a doctor who would approve any request she made. *Id.* at 18-19. Honda, however, believes that Jones cannot establish her prima facie FMLA case for the same reason that she could not do so with her disability discrimination claim: her "actions of creating an intimidating, hostile, and offensive work environment" were "intervening actions" that severed any inference of causality based on the temporal proximity between her leave and her termination, because those actions occurred after her FMLA leave in December, 2010, but before her termination in February, 2011.[15] Doc. #19 at 11.

Contrary to Honda's assertion, under certain circumstances, an inference of causality that allows a plaintiff to establish a prima facie FMLA retaliation claim may arise solely from the temporal proximity between an employee's FMLA leave and termination. In *Seeger v. Cincinnati Bell Telephone Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012), for example, "the nearness in time between [the plaintiff's] return from FMLA leave and his termination—three weeks after his reinstatement and less than two months after he first notified [the defendant] of his medical leave" was sufficient for the plaintiff to "meet the low threshold of proof necessary to establish a prima facie case of retaliatory discharge." *See also Judge v. Landscape Forms, Inc.*, No. 14–1362, 2014 WL 6610470 (6th Cir. Nov. 21,

---

[15] Honda also argues that Martin's comments were irrelevant because he was not a decision maker, and there is no evidence that he made them to the decision makers who terminated Jones. *Id.* at 13-14. As discussed *supra* in Part IV.A.3., there is a genuine issue of material fact regarding Martin's role in Jones' termination.

2014), at *5 (citing *Seeger* and observing that "the causal connection between the protected activity and the adverse employment action necessary for a prima facie case of retaliation can be established solely on the basis of close temporal proximity". In *Judge,* slightly less than two months passed between the end date of the plaintiff's FMLA leave and his termination, which was sufficient to establish his prima facie case of FMLA retaliation. *Id.* at *6. Here, too, Jones was terminated on February 14, 2011, a little less than two months after her last FMLA leave ended on December 20, 2010. Mindful of the "low threshold of proof" at this stage, the Court accepts this temporal proximity as indirect evidence of the causal connection between the exercise of an FMLA-created right and an adverse employment action necessary to state a prima facie case of FMLA retaliation. *Seeger*, 681 F.3d at 283.

Honda contends that temporal proximity alone cannot establish the causal connection between the exercise of an FMLA-protected right and an employee's termination. This contention is incompatible with the Sixth Circuit's observation in *Judge* that the court has "held that the causal connection between the protected activity and the adverse employment action necessary for a prima facie case of [FMLA] retaliation can be established solely on the basis of close temporal proximity." *Judge*, 2014 WL 6610470 at *5 (citing *Seeger*, 681 F.3d at 283-84). Furthermore, the cases cited by Honda to support this proposition are either not binding or not precisely on point. Doc. #15 at 36; Doc. #19 at 11. In *Nilles v.*

*Givaudan Flavors Corp.*, No. 1:10-cv-919, 2012 WL 1537613 (S.D. Ohio May 1, 2012), for example, the court primarily relied on undisputed evidence that the defendant had intended to terminate the plaintiff before the FMLA leave even commenced to conclude that the plaintiff failed to establish a prima facie case of FMLA retaliation. It noted as well that, even in the absence of that evidence, the plaintiff's termination "six months after his last FMLA leave" was "insufficient to establish temporal proximity." *Id.* at *7. *Nilles* does assert that temporal proximity alone could not establish such a causal connection, and cites *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554-55 (6th Cir. 2002) and *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2002) in support of the proposition. *Id.* at *6. However, both *Ford* and *Randolph*, also cited by Honda in its brief, concerned Title VII retaliation claims, not those arising under the FMLA. This may be a distinction without a difference. Nevertheless, in light of the Sixth Circuit's reliance on temporal proximity alone in *Seeger* and *Judge*, which both addressed FMLA retaliation claims and are more recent decisions than *Ford* or *Randolph*, the Court is not persuaded by Honda's assertion that a bright-line rule on temporal proximity prevents Jones from stating a prima facie case of FMLA retaliation.

Honda also argues that Jones cannot establish her prima facie case because the hostile and inappropriate behavior she engaged in that led to her termination occurred after her FMLA leave and before her termination, thereby severing any

inference of causality between those two events. As with Jones' disability discrimination claim, the Court will reserve discussion of this argument for the pretext stage of the *McDonnell Douglas-Burdine* analysis. Accordingly, for the reasons set forth above, the Court concludes a reasonable jury could find that Jones can state a prima facie case of FMLA retaliation.

### 2. *A Legitimate, Nondiscriminatory Basis for Termination*

As discussed previously in Part IV.A.2., by pointing to the legitimate, nondiscriminatory reason of Jones' hostile and offensive conduct, Honda fulfills is burden of production at the second stage of the *McDonnell Douglas-Burdine* analysis.

### 3. *Pretext*

A plaintiff may prove pretext by showing that the defendant's reasons 1) had no basis in fact; 2) were not the actual reasons for the defendant's actions; or 3) were an insufficient basis for the defendant's actions. *Manzer v. Diamond Shamrock Chems.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

With regards to pretext, the Court finds that the same genuine issues of material fact discussed with regards to Jones' disability discrimination claim also demonstrate pretext applicable to her FMLA claim. As discussed, there are genuine issues of material fact concerning Mike Martin's role in Jones' termination, and his motivation for commenting about her use of FMLA leave and accusing her

54

of having a doctor who would approve any leave she requested.  These comments were made before the appeals board that had convened to consider whether to uphold Jones' termination on completely unrelated grounds, Jones' hostile and inappropriate behavior.  As noted, if the board were, in fact, reviewing Honda's proffered reason for terminating Jones, the comments were irrelevant to such a review.  Thus, a reasonable jury could conclude that Martin's accusations that Jones had taken unjustified FMLA leave and had a doctor who would approve any leave she wished demonstrate a degree of animus based on Jones' use of FMLA leave that may have factored into the decision to terminate her.

According to Honda, it is entitled to summary judgment on Jones' FMLA retaliation claim because any inference of causality between her FMLA leave and her termination is severed by the intervening occurrence of the hostile and inappropriate behavior for which she was terminated.  However, the genuine issues of material fact raised by Martin's remarks are sufficient to overcome this argument.  His remarks appear particularly relevant to Jones' FMLA claim, as they specifically address the leave that she took, and a reasonable jury could conclude that they reflected an ongoing animus that predated her hostile and inappropriate behavior.  This inference weakens the argument that Jones' "intervening" behavior severed any inference of causation.  Furthermore, it bolsters the inference that the behavior could have been a welcome excuse for firing her to satisfy a pre-existing

55

retaliatory animus. Accordingly, the Court finds Honda's argument insufficient to overcome the evidence of pretext that arise from Martin's comments.

In conclusion, a reasonable jury could doubt the reasons proffered by Honda for terminating Jones, based on the genuine issue of material facts regarding Mike Martin's role in Jones' termination, and his statements concerning her FMLA leave. For these reasons, a reasonable jury could conclude that Honda's stated reasons for terminating Jones were not the "actual reasons for [its] actions," which demonstrates pretext under the second prong set forth in *Manzer v. Diamond Shamrock Chems.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Accordingly, Honda is not entitled to summary judgment on Jones' FMLA claim (Third Claim for Relief), and its motion is overruled with respect to said claim.

### E. Intentional Infliction of Emotional Distress (Fourth Claim for Relief)

Jones has also alleged a claim for Intentional Infliction of Emotional Distress ("IIED") under the common law of Ohio. Doc. #2 at 6-7. Her Complaint alleges that Honda engaged in a "vendetta to destroy her career" that resulted in "serious emotional stress," even though her conduct did not justify terminating her. *Id.* According to Jones, Honda made comments that she was unable to "keep up" with younger male employees, and the "comments were intentional and calculated to cause severe emotional distress" to her. *Id.*

56

Citing *Blackshear v. Interstate Brands Corp.*, 495 F. App'x 613, 620 (6th Cir. 2012), Honda argues that, as a matter of law, an employer's decision to terminate an employee because it believed the employee violated company policy cannot sustain a claim for IIED, even if the decision was discriminatory. Doc. #15 at 38.

Jones acknowledges that "allegedly unfair employment decisions, without more, are insufficient to support claims of IIED." Doc. #18 at 19. Nevertheless, she argues that the following circumstances demonstrate the existence of genuine issues of material fact regarding Honda's intent to cause her severe emotional distress: 1) requiring her to work with a foot pedal while under a medical restriction not to; 2) her allegedly discriminatory termination; 3) the "outrageous comments about her FMLA" leave at made before the associate review panel that heard her termination appeal. *Id.* at 19-20.

Honda replies with two arguments. First, Jones stated during her deposition that her IIED claim is based solely on her termination. Doc. #19 at 19. This precludes her from now arguing that the claim arises from having to use a foot pedal while on a medical restriction or from comments at the associate review panel. *Id*. Second, even if these allegations formed the basis for her claim, they do not amount to the type of conduct that can support an IIED claim. *Id.*

Under Ohio law, a claim of IIED imposes liability on "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress

57

to another . . . for such emotional distress, and[,] if bodily harm to the other results from it, for such bodily harm." *Yeager v. Local Union 20, Teamsters, Chauffers, Warehousemen & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983) (quoting Restatement (Second) of Torts § 46 (1965)), *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007). In addition, such liability only results when "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

The Court agrees with Honda that Jones expressly stated that her termination was the sole basis for her IIED claim, which precludes her from pointing to the use of a foot pedal during work or comments made before the associate review panel as the facts supporting the claim. The following exchange from Jones' deposition demonstrates her disclaimer:

> Q. The basis of the [IIED claim] is that you claim Honda caused you emotional distress by terminating your employment?
>
> A. Yes.
>
> Q. Any other claims that you're asserting as part of that cause of action?
>
> A. No.

Jones Dep. at 13 (Doc. #20-1 at 13).

Even if Jones had not made this disclaimer, she has pointed to nothing in the record to support her allegation that a "vendetta to destroy her career" existed, and the comments that allegedly distressed her are insufficient to support a claim

58

for IIED.  As discussed previously, Jones asserted during her deposition that Martin told the associate review panel hearing her appeal that she had taken a "very long leave" in 2003 that should not have been approved.  Jones Dep. at 52-53 (Doc. #20-1 at 14).  However, "[m]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient to sustain a claim for [IIED]." *Brunsman v. W. Hills Country Club*, 785 N.E.2d 794, 726, 2003-Ohio-891 (Ohio Ct. App. 2003).  As a one-time expression by one employee, Martin's comments fail to demonstrate the "vendetta" Jones alleges.  The accusation may have insulted Jones or caused her indignity in front of her peers, but his comments simply do not rise to the level of objective outrage that a reasonable jury would consider worthy of a remedy.

Furthermore, as a matter of law, "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more.  If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).  In *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110-11 (6th Cir. 2008), the Sixth Circuit upheld a grant of summary judgment on an IIED claim brought under Ohio law by a plaintiff who had also stated a claim of disability discrimination under the ADA.  The plaintiff based her IIED claim on allegations that fellow employees had "lied to her about meetings concerning her

59

need for a stool, delayed calling her back to work, threatened her with loss of

benefits, and contacted other [] stores to prevent her from using a stool at other

stores." *Id.* at 1111.  The Sixth Circuit held that, under *Godfredson*, this was

insufficient to demonstrate the "something more" that an IIED claim required

beyond the circumstances of her termination, even as it found that genuine issues

of material fact existed as to whether her employer had discriminated against her

based on disability.  The plaintiff also failed to provide any evidence of emotional

distress apart from her own testimony, as required to support an IIED claim under

Ohio law. *Id.* (citing *Buckman-Peirson v. Brannon*, 2004-Ohio-6074, 822 N.E.2d

830, 841 (Ohio Ct. App. 2004)).  Jones' allegations of emotional distress arising

from the circumstances of her termination are similarly insufficient to support a

claim for IIED.  Furthermore, she points to nothing in the record to support her

allegations of emotional distress.  Unlike the plaintiff in *Talley*, she does not even

cite to her own deposition.  In fact, she cites to nothing in the record at all to

resist summary judgment on her IIED claim, and simply asserts that "based on the

truthful factual allegations of Plaintiff's complaint, Plaintiff should be permitted to

have her claim considered" beyond summary judgment.  Doc. #20 at 20.  This is

plainly insufficient to withstand summary judgment under Rule 56(e) of the Federal

Rules of Civil Procedure, which "requires the nonmoving party to go beyond the

pleadings" and point to "specific facts showing that there is a genuine issue for

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  For the foregoing reasons, Honda is entitled to summary judgment on Jones' IIED claim.

**V.    CONCLUSION**

For the reasons set forth above, Honda's Motion for Summary Judgment (Doc. #15) is SUSTAINED in part and OVERRULED in part.  The motion is sustained with regards to Jones' claims of sex discrimination (Second Claim for Relief) under Ohio Rev. Code § 4112.02(A) and intentional infliction of emotional distress under Ohio common law (Fourth Claim for Relief), which are DISMISSED WITH PREJUDICE.  However, the motion is overruled with respect to Jones' claims of disability discrimination based on a "failure to accommodate" under Ohio Rev. Code § 4112.02(A) (First Claim for Relief), discrimination "because of" disability under Ohio Rev. Code § 4112.02(A) (also stated in the First Claim for Relief), and FMLA retaliation under 29 U.S.C. § 2615(a)(2) (Third Claim for Relief), which are not dismissed.  With respect to these claims, the motion is overruled without prejudice.  Honda may renew its Motion for Summary Judgment on the aforementioned claims if a more detailed factual record is developed that justifies such a filing.

Counsel of record will note that a telephone conference call will be convened by the Court at 8:45 a.m. on Monday, March 16, 2015, to set a new trial date.

Date: March 9, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE